**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dale Jacks, as trustee of the Plaintiff Taft-Hartley trust funds, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>JBJ Electric Co., LLC.,<br><br>    Defendant.<br>_____<br>JBJ Electric Co., LLC.,<br><br>    Counter-Claimant,<br><br>vs.<br><br>Dale Jacks, as trustee of the Plaintiff Taft-Hartley trust funds<br><br>    Counter-Defendants. | No. CIV 04-2110-PHX-MHM<br><br>**ORDER** |

Currently before the Court is Plaintiffs Dale Jacks and Debra Margraf's, as trustees of the Plaintiff Taft-Harley trust funds ("Plaintiffs"), Motion for Summary Judgment. (Dkt.#92). After reviewing the pleadings and record and finding oral argument to be unnecessary, the Court issues the following Order.

**I.    Procedural History**

Plaintiffs, as representatives of various trust funds, filed this amended action seeking to collect contributions owed to them under a collective bargaining agreement entered into

between Defendant JBJ Electric Company, LLC ("Defendant" or "JBJ") and International Brothers of Electrical Workers, Local 640, (the "Union"). (Dkt.#85). Plaintiffs assert claims under the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") and the Employee Retirement Security Act, 29 U.S.C. § 1132 ("ERISA") (Dkt.#85). Defendant has answered denying Plaintiffs' allegations and counterclaimed asserting a declaratory claim of fraud in the execution regarding the subject collective bargaining agreement upon which Plaintiffs rely. (Dkt.#86).[1] On February 16, 2007, Plaintiffs filed the instant Motion seeking (1) dismissal of Defendant's counterclaim of fraud in the execution upon summary judgment review; (2) a ruling that Defendant did not properly terminate the subject collective bargaining agreement prior to June 25, 2005; and (3) an award of appropriate damages in support of Plaintiffs' collection claims against Defendant. The Motion is fully briefed and ripe for this Court's review.

**II.     Factual Background**

The Plaintiff trust funds, IBEW Local Union No. 640 and Arizona Chapter NECA Health & Welfare Fund; IBEW Local Union No. 640 and Arizona Chapter NECA Pension Fund; National Electrical Benefit Fund; and Phoenix Electrical Industry Joint Apprenticeship and Training Committee are Taft-Hartly trust funds. Plaintiffs Dale Jacks and Debra Margraf are each duly appointed representatives empowered to represent the trust funds. Defendant is and has at all relevant times acted as a construction contractor within Maricopa County, Arizona. Defendant was formed by Daniel H. Roth and his wife and acts as a limited liability company.

The Plaintiffs seek to enforce the terms and provisions of a document entitled Letter of Assent "Form B" (the "Letter of Assent - B") signed by Mr. Roth, on behalf of Defendant JBJ on October 23, 2003. (Plaintiff's Statement of Facts "PSOF" ¶ 18). The Letter of Assent - B provides in pertinent part:

---

[1] This case was originally filed on October 7, 2004, and underwent several rounds of motions challenging certain aspects of the pleadings before the filing of Plaintiff's Amended Complaint.

- 2 -

> This is to certify that the undersigned employer has examined a copy of the current INSIDE labor agreement between ARIZONA CHAPTER, N.E.C.A. and Local Union 640, IBEW.
>
> The undersigned employer hereby agrees to comply with all of the provisions contained in the above mentioned agreement and all approved amendments thereto, as well as subsequent approved agreements between ARIZONA CHAPTER, N.E.C.A and Local Union 640, IBEW. It is understood that the signing of this letter of assent shall be binding on the undersigned employer as though he had signed the above referred to agreement, including any approved amendments thereto, and any subsequent approved amendments.

(PSOF ¶ 19).

The Inside Agreement, a collective bargaining agreement, referenced in the Letter of Assent - B, possesses provisions obligating the employer, Defendant, to make certain contributions with respect to covered employees based upon the number of hours worked. (PSOF ¶ 46). Prior to the signing of the Letter of Assent - B, Defendant, upon receiving a standard package of documents, including blank forms of the Letter of Assent - B, a Letter of Assent "Form A" ("Letter of Assent - A") and employer bond, signed the Letter of Assent - A on October 12, 2003. (PSOF ¶ 32) The Letter of Assent - A, while possessing certain different characteristics of the Letter of Assent - B also incorporates the Inside Agreement of the Letter of Assent - B. (PSOF ¶ 34). During the meeting between Mr. Roth and Steve Speer, acting as a representative of the Union, on October 23, 2003, Defendant executed the Letter of Assent - B and it was put into effect. (PSOF ¶ 36). In addition, prior to the execution of the Letter of Assent - B, Mr. Roth, on behalf of Defendant, entered into an "Employer's Bond" which stated in pertinent part:

> WHEREAS, the condition of the above obligation is such that the Principal [JBJ Electric Company, LLC] as a Contractor, has entered into a Collective Bargaining Agreement in effect this date and amendments thereof with Local Union 640 of the International Brotherhood of Electrical Workers, providing among other things for the payment of wages to the Employees of the Principal and payment of other sums to the I.B.E.W. 640 Apprenticeship and Training Trust, National Electrical Benefit Fund, I.B.E.W. Local 640 Health and Welfare Trust Fund, I.B.E.W. Local 640 Pension Trust Fund, as specified in the agreement; and further providing either in the Collective Bargaining Agreement or in the Trust Agreement . . . for liquidated damages, penalties, attorneys' fees and costs, collection costs, accounting costs, any other expenses incurred in enforcing the provisions of the Collective Bargaining Agreement in the collection of wages, benefits, or monies due and owing to the Employees and/or I.B.E.W. Local 640 and the aforementioned funds and trusts.

(PSOF ¶ 30).

- 3 -

Despite Mr. Roth's signature on the Letter of Assent - B, which incorporates by reference, the Inside Agreement, Defendant challenges its contractual obligation to make contributions. Specifically, Defendant challenges the circumstances surrounding the Letter of Assent - B and what Mr. Roth reasonably believed he was agreeing to when he signed the document. For instance, Mr. Roth states that he signed the Letter of Assent - B, in the presence of Mr. Speer at his office, so that Stan Todd, an employee of Defendant, could receive 300 hours of work to maintain his pension. (Defendant's Statement of Facts ("DSOF") ¶¶ 34, 35).[2] According to Mr. Roth, Mr. Todd was in jeopardy of losing his union pension at the time unless he worked 300 hours on a union job and Mr. Roth signed the agreement so that Mr. Todd could keep his pension by working the required hours on a union job. (DSOF ¶ 53, 64). Mr. Roth testified that he did not understand that he was agreeing to any type of labor agreement when he executed the Letter of Assent - B (DSOF ¶ 65), but that Mr. Speer instructed Mr. Roth that the Letter of Assent - B was the vehicle by which Mr. Todd could get his hours. (DSOF ¶ 68). Mr. Roth further states that he did not scrutinize the contents of the Letter of Assent - B based upon the representations of Mr. Speers (DSOF ¶¶ 82, 84) and prior to signing the agreement he did not know the significance of a collective bargaining agreement and had not been provided a copy of the collective bargaining agreement or Inside Agreement prior to October 23, 2003. (DSOF ¶¶ 54-56, 72). Mr. Roth further states that based upon the affirmative representation of Mr. Speers, he believed that the Letter of Assent - B would only apply to Mr. Todd, Defendant's only union employee (DSOF ¶ 62) and that Mr. Roth would have never signed the Letter of Assent - B had it pertained to his other employees. (DSOF ¶ 63).

---

[2] The Court notes that Defendant's accompanying statement of facts in support of its response to Plaintiff's Motion for summary judgment is not in compliance with LRCiv. 56.1(b), which requires the non-moving party to provide a document addressing each of the moving party's separate statement of facts. Rather than submit such a list responding to each of the Plaintiffs' statements of fact, Defendant has simply filed its own separate statement of facts. The Court will review both sets of statements of fact, but Defendant is instructed to comply with the Local Rule with respect to any such future filings.

- 4 -

**III.  Summary Judgment Standard**

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The Court views the evidence in the light most favorable to the nonmoving party and draws any reasonable inferences in the nonmoving party's favor. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.  S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**IV.  Analysis**

    **A.  Defendant's Fraud in the Execution Defense and Declaratory Counterclaim**

        **(1)  Fraud in the Execution vs. Fraud in the Inducement**

In general, courts have recognized a streamlined approach towards recovering contributions owed under the terms of a collective bargaining agreement.  As noted by the Eighth Circuit, the purpose of such actions under 29 U.S.C. § 1145 is to "simplify actions to collect delinquent contributions, avoid costly litigation and enhance the actuarial planning necessary to the administration of multiemployer pension plans." Cent States, Southeast & Southwest Areas Pension Fund et al. v. Indep. Fruit & Produce Co., 919 F.2d 1343, 1348 (1990).  The Second Circuit in Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (1990) described such actions and the limited defenses available to the employer by noting in pertinent part:

> [A]n employer may not assert that the union orally agreed not to enforce the terms of the collective bargaining agreement . . . that the employer was fraudulently induced to enter into the agreement . . . or that no contract was formed because of unilateral or mutual mistake of fact . . . . Our research has disclosed only two defenses recognized by the courts: (1) that the pension contributions themselves are illegal . . . and (2) that the collective bargaining agreement is void (not merely voidable) . . . . Thus, once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole.

(citations omitted).

In the Ninth Circuit, as in other circuits, the defense of fraud in the inducement in opposing the employer's obligation to make contributions under a collective bargaining agreement is not a valid defense. Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 773 (9th Cir. 1986) (citing Southern California Retail Clerks Union and Food Employers Join Pension Trust Fund v. Bjorklund, 728 F.2d 1262, 1266 (9th Cir. 1985)). Conversely; however, as noted by the Parties, the defense of fraud in the execution of a collective bargaining agreement between the union and employer is a defense to an action for contributions. Id. at 774 (citing Operating Engineers Pension Trust v. Gilliam, 737 F.2d 1501, 1503 (9th Cir. 1984)). The difference between the two is that fraud in the inducement "induces a party to assent to something he otherwise would not have;" whereas, fraud in the execution "arises where a party executes an agreement 'with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.'" Id. (citations omitted). To expand on the defense of fraud in the execution, "he who signs a document reasonably believing it is something quite different than it is cannot be bound to the terms of the document." Gilliam, 737 F.2d at 1504. For instance, "one who signs a promissory note reasonably believing he only gave his autograph is not liable on the note." Id. The difference between the two fraud defenses is perhaps best illustrated by a review of Ninth Circuit authority.

For instance, in Bjorklund, the employer, who entered a collective bargaining agreement with the union, asserted that the union representative made a false assurance that the employer, himself, would be eligible to obtain a pension and that the employer would not be required to make contributions for the employer's part-time employees. 728 F.2d at 1263-

1  64. However, it turned out that the employer was not eligible for a pension and was required
2  to make contributions for the part-time employees. Id. The Ninth Circuit rejected the
3  employer's argument regarding the union representative's misrepresentation because the
4  employer's defense went directly to the employer's central motivation for entering the
5  agreement, which invoked the defense of fraud in the inducement, and thus, as noted above,
6  was not a valid defense to a claim for contributions under the terms of a collective bargaining
7  agreement. Id.

8  Conversely; in Gilliam, an employer signed a collective bargaining agreement under
9  the impression that he was only applying to become a member of the union as an owner-
10 operator so that he could operate on a union job site. 737 F.2d at 1504-05. The Ninth Circuit
11 rejected the trust fund's action for contributions under the agreement holding that the
12 employer was not obligated because the employer had reasonably relied on the union's
13 representation that the employer was signing a document of a wholly different nature.
14 Notably, the union's agent produced a number of forms that he claimed to be standard forms
15 for owners-operators and did not tell the employer that any of the forms involved a short-
16 form agreement. In addition, based upon the representations of the union's agent, the
17 employer did not read the documents. The Ninth Circuit determined that "[u]nder the
18 circumstances, [the employer] reasonably and justifiably thought the documents involved
19 only an application for union membership and [the employer's] signing of the short-form
20 agreement did not create a binding collective bargaining agreement." Id. at 1505.

21 In this Court's view, in light of the authority above, the distinction between the
22 defenses of fraud in the inducement and fraud in the execution, is whether the employer
23 reasonably believes it is signing a document different that it actually is, which invokes fraud
24 in the execution, or whether the employer signs the document believing the terms and
25 conditions of the agreement are different than what they actually they are, which invokes
26 fraud in the inducement.

27         **(2)    Fraud in the Execution Related to this Case**

28

1     The question presented upon summary judgment, is whether in viewing the evidence
2 in the light most favorable to Defendant, no reasonable trier of fact could conclude that Mr.
3 Roth, as representative of the Defendant, reasonably believed he signed the document, *i.e.*,
4 the Letter of Assent - B, believing it to be it be something different than it actually was.
5 <u>Gilliam</u> *supra.* In this Court's view, there are factual issues that preclude this Court from
6 determining, as a matter of law, that Defendant's fraud in the execution counterclaim and
7 defense fail as a matter of law. In reviewing the record, it appears that a reasonable trier of
8 fact could conclude that Mr. Roth signed the Letter of Assent - B reasonably believing that
9 it was something quite different than it actually was, *i.e.*, a binding collective bargaining
10 agreement. For instance, according to Mr. Roth, he believed that he was only entering into
11 an agreement that would allow Mr. Todd to obtain union hours so as to keep his union
12 pension. Mr. Roth further states he did not believe that he was entering into any type of labor
13 agreement. (DSOF ¶¶ 53, 64, 65). In addition, Mr. Roth asserts that his belief of such was
14 based upon the representations of the union's agent, Mr. Speer. Specifically, Mr. Roth
15 contends that Mr. Speer instructed him that the Letter of Assent - B was the vehicle by which
16 Mr. Todd could keep his union pension. (DSOF ¶ 68). Moreover, Mr. Roth asserts that prior
17 to signing the Letter of Assent - B, he did not receive a copy of the collective bargaining
18 agreement and based upon the representations of Mr. Speer did not scrutinize the contents
19 of the Letter of Assent - B. (DSOF ¶ 84).

20    These representations of fact by Defendant implicate circumstances similar to those
21 presented in <u>Gilliam</u>. As noted above, in <u>Gilliam</u>, the employer reasonably believed, based
22 primarily on the conduct and representations of the union agent, that it was only applying for
23 union membership and not entering into any formal collective bargaining agreement. <u>Gilliam</u>,
24 737 F.2d at 1504-05. The facts and circumstances of <u>Gilliam</u> were described as unusual;
25 however, they are not unlike those presented here. For instance, similar to the employer's
26 position in <u>Gilliam</u>, Defendant contends that Mr. Roth reasonably believed he was entering
27 into an agreement to allow Mr. Todd to gain union hours, not to bind Defendant to any type
28 of collective bargaining agreement. While, the Court agrees with the Plaintiff that

- 8 -

Defendant's assertions regarding the terms and conditions of the agreement, such as whether only Mr. Todd or other employees would be bound by the agreement, amounts to a defense of fraud in the inducement, Defendant's arguments regarding Mr. Roth's beliefs as to the nature of the agreement as a whole implicates the defense of fraud in the execution and is properly presented as a defense.[3]

In making its determination, the Court notes that the validity of Defendant's fraud in the execution defense is highly factual and raises questions to be resolved by the finder of fact. For instance, whether Mr. Roth reasonably believed he was signing a document different that it actually was will require the finder of fact to weigh the relevant evidence, *i.e.*, the plain terms of the Letter of Assent - B and circumstances surrounding the agreement as well as credibility determinations.[4] Such factual inquiries requiring evidentiary evaluation by the trier of fact are not uncommon in collection actions such as this. See Gilliam, 737 F.2d at 1502 (noting that after hearing evidence, the district court ruled that no collective bargaining agreement existed); Operating Engineers Pension Trust v. Cecil Blackfoot Service, Inc., 795 F.2d 1501, 1503 (9th Cir. 1986) (following a two-day bench trial, the district court entered judgment for trusts rejecting employer's fraud in execution defense); Rozay's Transfer, 791 F.2d at 772 (after denying cross-motions for summary judgment, district court, after one-day bench trial, determined trust funds were entitled to contributions under collective bargaining agreement); Operating Engineers Pension Trust v. Giorgi, 788

---

[3] Defendant's contentions as to the terms and conditions of the agreement such as whether only Mr. Todd or all other of Defendant's employees would be bound to the agreement do not implicate the defense of fraud in the execution. (DSOF ¶¶ 62, 63, 69), See Rozay's Transfer, 791 F.2d at 774-775 (rejecting fraud in execution defense by employer based upon alleged misrepresentation from union agent regarding effect of collective bargaining agreement where employer was fully aware that document that was signed was a collective bargaining agreement).

[4] For instance, the finder of fact may have to weigh such factors as Mr. Roth's background as a business owner, educational experience and opportunity to review the agreement to determine whether he possessed the knowledge or reasonable opportunity to obtain knowledge of the agreement's character or terms. Rozay's Transfer, 791 F.2d at 774.

1  F.2d 620 (9th Cir. 1986) (reversing district court which held, after trial, that subcontractor was
2  not bound by collective bargaining agreement).

3  Accordingly, the Court will deny Plaintiff's Motion for summary judgment with
4  respect to Defendant's fraud in the execution declaratory counterclaim and affirmative
5  defense.

6  **(B)    Termination Date of Collective Bargaining Agreement**

7  In pursuit of summary judgment, Plaintiffs seek a ruling from the Court regarding the
8  termination date of the collective bargaining agreement between Plaintiff and Defendant.
9  As noted above, the Court will deny Plaintiffs' request for summary judgment on
10 Defendant's fraud in the execution counterclaim; however, assuming after presentation of
11 evidence at trial it is determined that the Defendant's counterclaim fails, then a determination
12 regarding the applicable termination date is necessary to calculate damages.

13 Plaintiffs note the plain language of the Inside Agreement or collective bargaining
14 agreement provides that the agreement will terminate on June 20, 2005. (PSOF ¶ 44). Based
15 upon this language, Plaintiffs contend that June 20, 2005, is clearly the termination date of
16 the Parties' agreement.  However, based upon this Court's review of the record, the
17 agreement also provides that "[e]ither party . . . desiring to change or terminate this
18 Agreement must provide written notification at least ninety (90) days prior to the expiration
19 date of the Agreement . . . ." (PSOF ¶ 44). Notably, on May 5, 2004, Defendant issued a
20 letter requesting that the agreement be terminated, thus suggesting cancellation of the
21 agreement (Id.). While the Defendant did not expressly respond to the Plaintiffs' argument
22 regarding a June 20, 2005, termination date, the Court, based upon Defendant's May 5, 2004
23 written request to terminate, cannot find, upon summary judgment, that June 20, 2005 is the
24 applicable termination date.  Absent a more sufficient basis, the Court will deny Plaintiffs'
25 request for summary judgment on this issue.

26 **V.    Summary**

27 The Court finds there presently to be an issue of fact surrounding Defendant's fraud
28 in the execution declaratory counterclaim and affirmative defense to Plaintiffs' claims for

- 10 -

1 contributions pursuant to the terms of the Letter of Assent - B and incorporated collective
2 bargaining agreement. In the viewing the evidence in the light most favorable to the
3 Defendant, there is a factual issue regarding whether Defendant reasonably believed it was
4 entering into an agreement of a different nature than a collective bargaining agreement
5 requiring contributions. Similarly, the Court will deny Plaintiffs' request for summary
6 judgment on the applicable termination date.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Plaintiffs' Motion for Summary Judgment. (Dkt.#92).

**IT IS FURTHER ORDERED** setting this matter for a status hearing on October 9, 2007, at 4:30 p.m. at which time a trial date will be addressed.

DATED this 18th day of September, 2007.

_____
Mary H. Murguia
United States District Judge